******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MANUEL T.*
(AC 40656)

Alvord, Bright and Bear, Js.

*Syllabus*

Convicted of the crimes of sexual assault in the first degree, risk of injury to a child, sexual assault in the second degree and sexual assault in the fourth degree in connection with his alleged sexual abuse of the minor victim, the defendant appealed. Before trial, the trial court held a hearing on the admissibility of a video recording of a diagnostic interview of the minor victim by a clinical services coordinator, M, and ruled that certain statements made during that interview were admissible pursuant to the medical diagnosis or treatment exception to the hearsay rule. Thereafter, during the course of trial, the defendant sought to admit into evidence, over the state's objection, two screenshots from a cell phone that depicted text messages purportedly sent by the minor victim to her stepcousin, R, in which the author of the text messages discussed the minor victim's life and the minor victim's relationship with the defendant. Following a hearing held outside the presence of the jury, at which R testified as an offer of proof, the court ruled that the defendant had failed to properly authenticate the screenshots as being authored by the minor victim and excluded them from evidence. *Held*:

1. The trial court properly determined that the minor victim's statements made during the diagnostic interview fell within the medical diagnosis or treatment exception to the hearsay rule, and, thus, did not abuse its discretion in admitting the video recording of the diagnostic interview into evidence: the defendant's reliance on the primary purpose standard for determining the admissibility of the minor victim's statements under the medical diagnosis or treatment exception to the hearsay rule was misplaced, as statements made during a forensic interview by a minor that are offered solely under the medical diagnosis or treatment exception are admissible if such statements are reasonably pertinent to obtaining medical diagnosis or treatment, even if the primary purpose of the declarant's statements was not to obtain medical diagnosis and treatment, if it may be reasonably inferred from the circumstances that the declarant understands that the interview has a medical purpose, and in the present case there was sufficient evidence in the record to demonstrate that it reasonably could be inferred from the circumstances that the minor victim understood the interview to have a medical purpose to satisfy the requirement of that exception to the hearsay rule given that the interview took place in a medical facility, M's statements and questions to the minor victim during the interview, including M's statement that the interview was being recorded by the medical facility for future use, and the fact that the minor victim was told that she would be introduced to a medical provider and referred for counseling; furthermore, although certain questions posed by M were directed at uncovering facts that may have been immaterial to medical treatment or diagnosis, that did not preclude the minor victim's statements from falling within the medical diagnosis or treatment exception to the hearsay rule, as case law is clear that statements made in a diagnostic interview are admissible even when medical treatment or diagnosis is not the primary purpose of the inquiry.

2. The trial court did not abuse its discretion by excluding from evidence the two cell phone screenshots of certain text messages purportedly sent by the minor victim to R; the defendant failed to satisfy his burden of authenticating both screenshots because he failed to present sufficient evidence to make a prima facie showing that the minor victim was the author of the text messages, as both screenshots were incomplete and contained only partial messages, the screenshots did not indicate the date and time they were sent by the author or received by R, there was no evidence that the messages were part of a longer or ongoing conversation between the minor victim and R, the messages did not contain language or content sufficiently distinctive to establish the minor victim as the author, the screenshots were not corroborated by other

forensic computer evidence, and the minor victim denied authoring the text messages displayed in the screenshots.

Argued September 7—officially released November 13, 2018

*Procedural History*

Substitute information charging the defendant with four counts of the crime of risk of injury to a child, three counts of the crime of sexual assault in the first degree, and two counts of the crime of sexual assault in the second degree, and with the crimes of sexual assault in the fourth degree and tampering with a witness, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Bentivegna, J.*; verdict and judgment of guilty of four counts of risk of injury to a child, three counts of sexual assault in the first degree, and two counts of sexual assault in the second degree, and of sexual assault in the fourth degree, from which the defendant appealed. *Affirmed.*

*Hubert J. Santos*, with whom was *Trent A. LaLima*, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Elizabeth Tanaka*, assistant state's attorney, for the appellee (state).

*Opinion*

BRIGHT, J. The defendant, Manuel T., appeals[1] from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), four counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (E).[2] On appeal, the defendant claims that the trial court improperly (1) admitted into evidence a video recording of the diagnostic interview between the minor victim and a clinical services coordinator, and (2) excluded from evidence two screenshots of text messages purportedly sent by the minor victim to her stepcousin. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. On March 28, 2014, the minor victim, age seventeen at the time, reported to her family and the police that she had been sexually abused by the defendant, her stepfather. In accordance with police protocol, the minor victim was referred to the Greater Hartford Children's Advocacy Center (advocacy center) at Saint Francis Hospital and Medical Center for a diagnostic interview. On April 1, 2014, the minor victim participated in a diagnostic interview conducted by Lisa Murphy-Cipolla, the clinical services coordinator at the advocacy center. Although Murphy-Cipolla interviewed the minor victim alone, their conversation was observed through a "one-way mirror" by Detective Claire Hearn and Audrey Courtney, a pediatric nurse practitioner at the advocacy center.[3] In conformance with the ordinary practice of the advocacy center, the interview was video recorded.

During the interview, the minor victim disclosed, in precise detail, that the defendant sexually abused her over an approximate seven year period. The minor victim told Murphy-Cipolla, in relevant part, that beginning when she was eight or nine years old, until she was fifteen years old, the defendant, on numerous occasions, touched her inappropriately underneath her clothes. The minor victim also disclosed that, when she turned fifteen years old, the defendant "would force [her] to have sex with him." She further indicated that the defendant's actions would cause her to suffer physical pain, that she does not feel comfortable with her body, and that she regrets not disclosing the sexual abuse sooner. The defendant subsequently was arrested and charged with, inter alia, six counts of sexual assault and four counts of risk of injury to a child.

On June 6, 2016, the court held a pretrial hearing to

determine whether the video recording of the diagnostic interview would be admissible at trial. As an offer of proof, the state presented the testimony of Murphy-Cipolla and played a partially redacted version[4] of the video recording. Murphy-Cipolla testified regarding her background and the purposes and process of conducting diagnostic interviews, as well as the circumstances of her interview of the minor victim. The state argued that the video recording was admissible pursuant to the medical diagnosis and treatment exception to the hearsay rule, which is codified in § 8-3 (5) of the Connecticut Code of Evidence.[5] The defendant objected to the admission of the video recording on the ground that the minor victim's statements made during the interview constituted inadmissible hearsay because the minor victim was not seeking medical diagnosis or treatment.[6]

At the conclusion of the hearing, the court, in an oral decision, overruled the defendant's objection and held that the video recording was admissible pursuant to the medical diagnosis and treatment exception to the hearsay rule. In particular, the court concluded that the hearsay exception applied because the minor victim's reports of "physical symptoms," "body image mental health issues," and "medical concerns" were reasonably pertinent to obtaining medical diagnosis and treatment.

Thereafter, the defendant's case proceeded to a jury trial, at which the state presented the testimony of several witnesses, including Murphy-Cipolla. During the state's direct examination of Murphy-Cipolla, the state requested that the video recording be admitted into evidence. Notwithstanding the defendant's renewed objection, the court admitted into evidence the video recording as a full exhibit, and the state proceeded to play the video recording for the jury.

In the course of the defendant's rebuttal evidence at trial, the defendant sought to introduce two cell phone screenshots depicting text messages purportedly sent by the minor victim to her stepcousin, R, who is the defendant's niece.[7] Accordingly, the court held a hearing outside the presence of the jury to determine the admissibility of these screenshots. As an offer of proof, the defendant conducted a direct examination of R and produced both screenshots. R testified that, inter alia, both screenshots depict text message responses that she received from the minor victim in February or March, 2014. Both screenshots appear to display the minor victim's first name as the sender; neither screenshot, however, contains an indication as to the date or time that the messages were received. After conducting a cross-examination of R, the state objected to the admission of both screenshots arguing that they had not been authenticated properly because they were incomplete and devoid of necessary distinctive characteristics. The defendant countered that the screenshots

were admissible because R sufficiently identified the messages as being authored by the minor victim.

At the conclusion of the hearing, the court issued an oral decision sustaining the state's objection and deciding that both screenshots had not been authenticated sufficiently pursuant to § 9-1 (a) of the Connecticut Code of Evidence.[8] Specifically, the court determined that the defendant failed to make a prima facie case that the minor victim authored the text messages exhibited by the screenshots because, among other things, the messages were incomplete, lacking temporal indicators, and devoid of distinctive characteristics. Accordingly, the court excluded from evidence both screenshots.

The jury subsequently found the defendant guilty of six counts of sexual assault and four counts of risk of injury to a child. The court rendered judgment in accordance with the jury's verdict and imposed a total effective sentence of forty years incarceration, execution suspended after thirty years, with thirty-five years probation and lifetime sex offender registration. This appeal followed. Additional facts will be set forth as necessary.

Before turning to the merits of the defendant's claims, we briefly set forth the applicable standard of review. "It is well settled that [w]e review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . Under the abuse of discretion standard, [w]e [must] make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *Filippelli* v. *Saint Mary's Hospital*, 319 Conn. 113, 119, 124 A.3d 501 (2015).[9]

I

The defendant claims that the court improperly admitted into evidence a video recording of the diagnostic interview between the minor victim and Murphy-Cipolla. More specifically, the defendant argues that the court abused its discretion in determining that the video recording met the requirements of the medical diagnosis and treatment exception to the hearsay rule because "[t]he circumstances of this case make clear that criminal investigation and prosecution was not only the primary purpose of the interview, but was the overarching and singular purpose." We disagree.

The following additional facts are relevant to our resolution of the defendant's first claim on appeal. The diagnostic interview was held in the adolescent interview room at the advocacy center at Saint Francis Hos-

pital and Medical Center, which is an institution capable of providing medical services. At the outset of the interview, Murphy-Cipolla indicated to the minor victim that there were "a couple of ladies . . . that [she] work[ed] with" behind the one-way mirror that were observing their discussion, but she did not identify them or state their occupations to the minor victim. Murphy-Cipolla also informed the minor victim that their conversation was being recorded so that the video could be reviewed, and so that the minor victim would not "have to keep talking over and over and over again."

After several prefatory inquiries and the disclosure by the minor victim that the defendant had sexually abused her, Murphy-Cipolla then asked a series of questions to ascertain when and where the abuse occurred, as well as the manner in which the defendant had sexually assaulted her. More specifically, Murphy-Cipolla asked the minor victim to clarify which part of the defendant's body he used to touch her because it would be "helpful for our nurse . . . ." Murphy-Cipolla subsequently posed a similar question, stating that it "would be helpful . . . for our medical provider" to confirm the parts of the minor victim's body that the defendant had touched. Moreover, when asked what the abuse felt like, the minor victim responded that it was physically painful. Immediately thereafter, Murphy-Cipolla informed the minor victim that "when we're done today I'm going to introduce you to our medical provider and any questions that you have or any concerns you can talk with her."

Murphy-Cipolla also inquired as to whether the defendant always had used a condom, to which the minor victim responded that he did not. Later, when asked whether she had "any questions or concerns right now for the medical provider," the minor victim responded that she goes "to the OBGYN" but that she "want[ed] to make sure that [she did not] have any disease." Murphy-Cipolla then assured the minor victim that "when we're done, I'll introduce you to our medical provider and she'd be happy to talk with you about any concerns that you have." Additionally, the minor victim expressed some psychological concerns, stating, inter alia: "I just I hate feeling uncomfortable. And hating myself because . . . I hate that I waited so long to say something because if I was to say something earlier then—sooner than I would eventually be happy . . . ." In response, Murphy-Cipolla informed the minor victim that "we could help to make a referral for counseling just so you have somebody to talk with about all those issues."

"It is well settled that . . . [a]n out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies." (Internal quotation marks omitted.) *State* v. *Carrion*, 313 Conn. 823, 837, 100 A.3d 361 (2014). The medical diagnosis and treat-

ment exception to the hearsay rule is codified in § 8-3 (5) of the Connecticut Code of Evidence. See footnote 5 of this opinion. "The legal principles relating to the medical treatment exception are well settled. Admissibility of out-of-court statements made by a patient to a medical care provider depends on whether the statements were made for the purposes of obtaining medical diagnosis or treatment . . . and on whether the declarant's statements reasonably were related to achieving those ends. . . . The term medical encompasses psychological as well as somatic illnesses and conditions. . . . Furthermore, statements made by a sexual assault complainant to a social worker may fall within the exception if the social worker is found to have been acting within the chain of medical care. . . .

"[S]tatements may be reasonably pertinent . . . to obtaining medical diagnosis or treatment even when that was not the *primary purpose* of the inquiry that prompted them, or the principal motivation behind their expression. . . . Although [t]he medical treatment exception to the hearsay rule requires that the statements be both pertinent to treatment and motivated by a desire for treatment . . . in cases involving juveniles, [we] have permitted this requirement to be satisfied inferentially." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Abraham*, 181 Conn. App. 703, 711, 187 A.3d 445, cert. denied, 329 Conn. 908, 186 A.3d 12 (2018); see *State* v. *Griswold*, 160 Conn. App. 528, 555–56, 127 A.3d 189 (rationale underlying medical treatment exception is that patient is incentivized to be truthful to obtain proper diagnosis and treatment), cert. denied, 320 Conn. 907, 128 A.3d 952 (2015).

This court recently distilled several decisions,[10] which apply the medical treatment exception to a diagnostic interview, into a lodestar test for admissibility based on reasonable inferences: "[T]he statements of a declarant may be admissible under the medical treatment exception if made in circumstances from which it reasonably may be inferred that the declarant understands that the interview has *a* medical purpose. Statements of others, including the interviewers, may be relevant to show the circumstances."[11] (Emphasis in original.) *State* v. *Abraham*, supra, 181 Conn. App. 713; see, e.g., *State* v. *Ezequiel R.*, 184 Conn. App. 55, 68–71,     A.3d     (2018) (video recording of interview admissible under medical treatment exception based on, inter alia, circumstances leading up to interview, location where interview took place, and interviewer's statements to victim during interview). Because the focus of the medical treatment exception is the declarant's understanding of the purpose of the interview, the inquiry must be restricted to the circumstances that could be perceived by the declarant, as opposed to the motivations and intentions of the interviewer that were not apparent to the declarant.[12]

Applying these principles to the present case, we conclude that the trial court did not abuse its discretion in determining that the video recording was admissible under the medical diagnosis and treatment exception to the hearsay rule because it reasonably can be inferred from the circumstances apparent to the minor victim that she understood the interview had a medical purpose. First, the interview took place at a medical facility, and the minor victim knew that the interview was being recorded by the medical facility for future use. Further, we can ascertain no reason for the minor victim to have thought that one of the observers was a police detective because the minor victim was informed only that there were "a couple of ladies . . . that [she] work[ed] with" behind the one-way mirror. Even if the minor victim was aware of the presence of a police officer behind the mirror, however, this fact alone would not eradicate the medical purpose of the interview. See *State* v. *Miller*, 121 Conn. App. 775, 783, 998 A.2d 170 (purpose of interview was for medical treatment even though victim knew that police officers were present during interview), cert. denied, 298 Conn. 902, 3 A.3d 72 (2010). Murphy-Cipolla also asked several direct questions, including whether the defendant used a condom, which could assist a prospective medical provider to identify whether the minor victim contracted any sexually transmitted diseases. Likewise, the minor victim was asked to confirm the nature of the defendant's sexual abuse for the explicit reason that it would be helpful to the nurse and the medical provider. Finally, when the minor victim expressed concerns about her physical and psychological well-being, Murphy-Cipolla informed the minor victim that she would be introduced to a medical provider and referred to counseling. All of these facts lead to the reasonable inference that the interview had a medical purpose.

Although certain questions posed by Murphy-Cipolla were directed at uncovering facts that may be immaterial to the medical treatment or diagnosis of the minor victim,[13] our case law is clear that the statements made in a diagnostic interview are admissible even when medical treatment or diagnosis is not the primary purpose of the inquiry.[14] *State* v. *Griswold*, supra, 160 Conn. App. 552–53; see *State* v. *Estrella J.C.*, 169 Conn. App. 56, 77–78, 148 A.3d 594 (2016). Indeed, the defendant, by exempting from his objection the minor victim's complaints seeking medical treatment; see footnote 6 of this opinion; recognizes that the interview had a medical purpose.[15]

Therefore, we conclude that the court did not abuse its discretion when it determined that the minor victim's statements made during the diagnostic interview were admissible pursuant to the medical diagnosis and treatment exception to the hearsay rule, and admitted into evidence the video recording of the diagnostic

interview.

## II

The defendant also claims that the court improperly excluded from evidence two cell phone screenshots of text messages purportedly sent by the minor victim to R. More specifically, the defendant argues that the court abused its discretion in determining that the defendant failed to authenticate sufficiently the two screenshots because he provided evidence that "met the requirements of a prima facie case of authenticity by presenting both a witness with personal knowledge of the conversation and [the minor victim's] phone number and that witness' description of identifying distinctive characteristics in the evidence." We disagree.

The following additional facts are relevant to our resolution of the defendant's second claim on appeal. Each of the two exhibits is a screenshot that depicts text messages that were received by a cell phone. The first screenshot portrays two text messages that were received by the cell phone, displays only the bottom half of the name of the sender, which appears to be the first name of the minor victim, does not include the phone number of the sender, and is devoid of any time or date reference. It also contains a portion of a text message to which the two text messages shown purportedly respond. The second screenshot evinces two partial text messages that were received by the cell phone, displays the entirety of the first name of the sender, which is the first name of the minor victim, does not include the phone number of the sender, displays 1:08 p.m. as the time that the screenshot was taken, but is devoid of any other time or date reference. As for the content of the messages contained in both screenshots; see footnote 7 of this opinion; the author expresses discontent for her current life situation except for her relationship with "[T]" and her "bf." The author also utilizes the terms "SMH" and "hit me up," and complains that "[M]anny" failed to fulfill his promise to purchase the author a car.

When defense counsel showed these two screenshots to the minor victim on cross-examination during the state's case-in-chief, the minor victim denied ever sending R any text messages and denied that she was the "sender" of the text messages displayed in the screenshots. At the hearing conducted outside the presence of the jury, R testified that she is the stepcousin of the minor victim and that the minor victim provided her cell phone number to R at a family gathering. R testified that, in February or March, 2014, despite the fact that she was "not really" "in touch" with the minor victim, R sent the minor victim a text message "to see how she was doing." R testified that the minor victim responded to her message and that the two exhibits evincing the two screenshots were a fair and accurate representation of the minor victim's responses. R also

attested to her cell phone number as well as the minor victim's cell phone number.

On cross-examination, R testified that the screenshots do not represent the entire conversation and, although she could not recollect the date of the conversation "clearly," she did know that it was "a couple of months before everything happened." R further testified that she manually input the minor victim's name into her cell phone, she was not with the minor victim at the time she received the messages from her, she never spoke to the minor victim in person about the conversation, and she did not know whether the minor victim's phone was password protected. When asked if she knew whether the minor victim had sent the text messages, R responded that members of the minor victim's family were referenced in the text. R also testified that the time displayed at the top of the second screenshot represents the time when the screenshot was taken, and not when the conversation occurred. Although R testified that the minor victim previously had utilized the acronym "SMH," which means shaking my head, and the phrase "why you hittin' me up" in the past, R also testified that these sayings are not particular to the minor victim, but, rather, that they are utilized by their entire generation. R further testified that she no longer has the cell phone that took the screenshots and that her cellular provider's records of text messages from the relevant period no longer exist.

"Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court. Conn. Code Evid. § 1-3 (a). The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the offered evidence is what its proponent claims it to be. Conn. Code Evid. § 9-1 (a). The official commentary to § 9-1 (a) of the Code of Evidence provides in relevant part: The requirement of authentication applies to all types of evidence, including . . . writings . . . [and] electronically stored information . . . . The category of evidence known as electronically stored information can take various forms. It includes, by way of example only, e-mails, Internet website postings, text messages and chat room content, computer stored records and data, and computer generated or enhanced animations and simulations." (Internal quotation marks omitted.) *State* v. *Smith*, 179 Conn. App. 734, 761–62, 181 A.3d 118, cert. denied, 328 Conn. 927, 182 A.3d 637 (2018).

"[T]he bar for authentication of evidence is not particularly high. . . . [T]he proponent need not rule out all possibilities inconsistent with authenticity, or . . . prove beyond any doubt that the evidence is what it purports to be . . . ." (Internal quotation marks omitted.) Id., 762–63. "[T]he showing of authenticity is not on a par with the more technical evidentiary rules that govern admissibility, such as hearsay exceptions, com-

petency and privilege. . . . Rather, there need only be a prima facie showing of authenticity to the court. . . . Once a prima facie showing of authorship is made to the court, the evidence, as long as it is otherwise admissible, goes to the jury, which will ultimately determine its authenticity." (Internal quotation marks omitted.) Id., 762.

"[A]n electronic document may . . . be authenticated by traditional means such as direct testimony of the purported author or circumstantial evidence of distinctive characteristics in the document that identify the author." (Emphasis omitted; internal quotation marks omitted.) Id., 763. "Among the examples of methods of authenticating evidence set forth in the official commentary to § 9-1 (a) of the Code of Evidence is that [a] witness with personal knowledge may testify that the offered evidence is what its proponent claims it to be, and [t]he distinctive characteristics of an object, writing or other communication, when considered in conjunction with the surrounding circumstances, may provide sufficient circumstantial evidence of authenticity. Conn. Code Evid. § 9-1 (a), commentary." (Internal quotation marks omitted.) Id. "[B]ecause an electronic communication, such as a Facebook message, an e-mail or a cell phone text message, could be generated by someone other than the named sender . . . proving only that a message came from a particular account, without further authenticating evidence, has been held to be inadequate proof of authorship." (Internal quotation marks omitted.) Id., 763–64.

In support of their arguments, each of the parties relies on *State* v. *Eleck*, 130 Conn. App. 632, 23 A.3d 818 (2011), aff'd, 314 Conn. 123, 100 A.3d 817 (2014), which is our seminal decision on the authentication of electronic evidence. In *Eleck*, we held that the trial court did not abuse its discretion in excluding from evidence a printout comprising Facebook messages sent by an individual to the defendant. Id., 634–44. When presented with the printout on cross-examination, the individual identified the "user name" as her own, denied sending the messages to the defendant, and testified that her account had been hacked. Id., 635. The following day, defense counsel offered the printout into evidence. The defendant testified that he had downloaded and printed the messages from his own computer, that he recognized the purported author's name and pictures on the Facebook account, and that the purported author removed him as a "friend" immediately after she testified on the previous day. Id., 636. Thereafter, the trial court sustained the state's authenticity objection "on the ground that the defendant had not authenticated that the messages were written by [the purported author] herself." Id. On appeal, this court affirmed the trial court's conclusion that the defendant failed to authenticate sufficiently that the individual was the author of the messages because, inter alia, of the con-

flicting testimony regarding the authorship and the unresolved issue of whether a third party may have sent the messages. Id., 641–42. We reached this conclusion even though the purported author's claim of hacking was "dubious . . . given that the messages were sent before the alleged hacking of the account took place . . . ." Id., 642. We further concluded that the contents of the messages did not "[provide] distinctive evidence" that the messages were written by the purported author. Id. In particular, we recognized that the exchange did "not reflect distinct information that only [the purported author] would have possessed regarding the defendant or the character of their relationship." Id. We contrasted the facts in *Eleck* to other cases in which "the identifying characteristics have been much more distinctive of the purported author and often have been corroborated by other evidence or with forensic computer evidence." Id., 643.

Since *Eleck*, this court has considered, on several occasions, whether electronic messages had been sufficiently authenticated. In *State* v. *Papineau*, 182 Conn. App. 756, 790–92, 190 A.3d 913, cert. denied, 330 Conn. 916,    A.3d    (2018), this court held that the state sufficiently had authenticated a series of text messages between the defendant and his former wife through the testimony of the former wife. This testimony included that they were in an ongoing relationship, that the messages were part of an ongoing conversation between them, that the messages prompted them to speak on the telephone, and that she was " 'very positive' " that the messages were from the defendant. Id., 791. In *State* v. *Smith*, supra, 179 Conn. App. 759–66, this court held that the state sufficiently had authenticated a Facebook message sent by the defendant to an individual through the testimony of the individual that she had received the message bearing the defendant's name only after she agreed to be part of the defendant's criminal plan, that the message was part of a larger series of messages, that the content of the messages made sense and revealed things the defendant would know, that the message contained a "unique speaking style" and content, and that the message definitively was from the defendant.

Applying these principles, we conclude that the trial court did not abuse its discretion in concluding that the defendant failed to meet his burden of authenticating both screenshots because he failed to present sufficient evidence to make a prima facie showing that the minor victim was the author of the text messages therein displayed. Both screenshots are devoid of any extra-textual identifying characteristics that would evince the date and time the messages were sent by the author, or received by R. R could only say that she received them in February or March, 2014. Not only does the second screenshot contain a partial message, but R testified that both screenshots are an incomplete

representation of the conversation. R did not testify as to what she had transcribed in the text messages she sent to the minor victim, and the screenshots display only a partial message that was sent by R. In the present case, unlike *Papineau* and *Smith*, there was insufficient corroborating evidence that these messages were part of some longer conversation or the content of such conversation.

Moreover, the content of the messages, as corroborated by R's testimony, also failed to provide sufficient authentication that the minor victim was the author. R was neither asked, nor did she testify, as to the general content of the messages. Rather, R testified that the author utilized two specific phrases, namely "SMH" and "hit me up." Although she testified that these phrases had been used by the minor victim in the past, she also stated that these phrases are not particular to the minor victim and are used by her entire generation. Additionally, although the messages allude to members of the minor victim's family and the status of various relationships, this fact is insufficient to support a finding that the minor victim was the author. It is likely that many persons, including members of the minor victim's family, would possess the knowledge of these facts. Thus, contrary to *Papineau* and *Smith*, R's testimony combined with the content of the messages was not sufficiently distinctive to establish that the minor plaintiff was the author.

In addition, unlike the identifying witnesses in *Papineau* and *Smith*, R did not have a current relationship with the purported author of the text messages that would suggest a reliable basis for identifying the author. In fact, R testified that she did not have a close relationship with the minor victim at the time of the exchange as they "kind of split off as [they] got older."

Nor were the screenshots corroborated by other events or forensic computer evidence. The only witness the defendant offered regarding the purported text conversation was R, and she could not provide further corroborative details, testifying that she was not with the minor victim when she received the messages, and that she had never spoken with the minor victim over the phone or in person about the conversation. Nor could R say if the minor victim's cell phone was password protected such that others could not easily gain access to it. In addition, R's cell phone was not available to be examined, and information was not offered from her cell phone provider to confirm the purported exchange with the minor victim. Similarly, neither the minor victim's cell phone nor cell phone records were offered to confirm that the minor victim was the author of the messages.

Finally, the entirety of the text message exchange was categorically contradicted by the direct testimony of the minor victim. During the state's case-in-chief, the

minor victim *denied ever sending R any text messages* and denied that she was the "sender" of the texts displayed in the screenshots. This testimony, like in *Eleck*, creates further uncertainty as to the authorship of the messages, particularly given the failure of the defendant to offer other corroborating evidence.

Therefore, we conclude that the court acted well within its discretion when it determined that the defendant failed to present sufficient evidence to support a finding that the minor victim was the author of the text messages, and excluded from evidence both screenshots of those messages.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The defendant originally appealed to our Supreme Court pursuant to General Statutes § 51-199 (b) (3). The appeal subsequently was transferred to this court pursuant to Practice Book § 65-1.

[2] The defendant also was charged with one count of tampering with a witness in violation of General Statutes § 53a-151. The state, however, entered a nolle prosequi after the jury was unable to reach a verdict on that count.

[3] Courtney was not present at the inception of the interview because she was speaking with the minor victim's parent. At the June 6, 2016 pretrial hearing, Murphy-Cipolla testified that Melanie Rudnick, a medical resident, also observed the interview behind the one-way mirror. Subsequently at trial, however, Murphy-Cipolla did not testify that Rudnick observed the interview.

[4] The defendant and the state agreed to omit certain portions of the video that contain personally identifying information or that otherwise would be inadmissible pursuant to General Statutes § 54-86f, commonly known as the rape shield statute. Accordingly, the state presented a partially redacted version of the video recording at the pretrial hearing and subsequently at the trial.

[5] Section 8-3 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness . . . (5) . . . [a] statement made for purposes of obtaining a medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical diagnosis or treatment."

[6] The defendant made one exception to his objection: "[T]he [c]ourt certainly can let in [the] inquiry—or [the minor victim's] complaint in seeking medical treatment and diagnosis to make her feel better about her body, for example, wearing of the bathing suits, seeking help with checking her out for disease, but other than those two portions, I would object . . . ."

[7] The two full messages contained within the first screenshot provide: "I didn't forget lol and yes he got himself a new car in a week then sold it for another car in less than a day but when it comes to me he can't get one. Smh his excuse is I don't deserve one cus of my attitude. He broke his promise to me about getting me that's why I don't talk to him anymore he doesn't deserve my kindness I'm sick and tired of BROKEN promises! But it is what it is. I'll just buy my own damn car since I buy everything else myself. But what's new with you? Why you all of a sudden hit me up. Lol." The first screenshot includes only a portion of R's text message, which provides: "[T]ime but idk from his perspective is."

The two partial messages contained within the second screenshot provide in relevant part: "[A]nd out there on my own. I turn 18 this year . . . I should be happy but I'm scared. And [m]y job is so stressful. This year hasn't been good for me at all it's always something everyday nothing good happens to me anymore the ONLY going good right now is my relationship with [T] and my bf. That's it. And same my dad keeps breaking his promises along with my step dad well manny. We don't even talk anymore it's like

neither of my fathers are there for me . . . so my mom is all I got. It really hurts to say it but it is what it is. And on top of this I've been looking for another job and saving up for a car cus manny is selfish and won't buy me one." R testified that all of the text messages she received were part of a single conversation in response to a text message sent by R.

[8] Section 9-1 (a) of the Connecticut Code of Evidence provides: "The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the offered evidence is what its proponent claims it to be."

[9] During appellate oral argument, defense counsel took the position, without citing any authority, that a trial court should consider the seriousness of the charged crime when making its evidentiary determinations. In addition, defense counsel advocated that, because the crimes at issue in the present case were punishable by life in prison, this court should conduct a more probing review of the trial court's exercise of its discretion. We reject these contentions as unsupported by Connecticut jurisprudence. Furthermore, we find the notion that some defendants, because of the seriousness of the charges against them, are entitled to greater leeway under the rules of evidence and a heightened standard of review by this court antithetical to the principle that all defendants can expect a consistent application of the law to their cases. Finally, the defendant's suggestions, if followed, would create confusion and uncertainty among parties, attorneys, and the trial court as to how our rules of evidence are to be applied.

[10] *State* v. *Estrella J.C.*, 169 Conn. App. 56, 74–80, 148 A.3d 594 (2016); *State* v. *Griswold*, supra, 160 Conn. App. 552–57; *State* v. *Giovanni P.*, 155 Conn. App. 322, 331–32, 110 A.3d 442, cert. denied, 316 Conn. 909, 111 A.3d 883 (2015); *State* v. *Donald M.*, 113 Conn. App. 63, 71, 966 A.2d 266, cert. denied, 291 Conn. 910, 969 A.2d 174 (2009); *State* v. *Telford*, 108 Conn. App. 435, 440–43, 948 A.2d 350, cert. denied, 289 Conn. 905, 957 A.2d 875 (2008).

[11] Although there is "no requirement of direct evidence of the declarant's state of mind at the time of the statement . . . [t]his is not to say that direct evidence would not be useful in the inquiry." *State* v. *Abraham*, supra, 181 Conn. App. 711–12 n.6. We observe that in some cases, including the present one, where the minor victim was seventeen years old at the time of the interview, the defendant could have sought such direct evidence by asking to voir dire the declarant outside the presence of the jury and before the interview was admitted into evidence, as to her understanding of the purpose of the interview.

[12] For instance, statements made by a declarant at an interview intended by the interviewer to be for medical diagnosis and treatment would not be admissible under the exception if it reasonably could not be inferred that the declarant understood that the interview had a medical purpose. Conversely, the fact that the interviewer or others suggested that the interview take place for some other purpose; i.e., the gathering of evidence; is of little or no significance if it reasonably could be inferred that the declarant understood that a purpose of the interview was medical diagnosis or treatment.

[13] For example, Murphy-Cipolla asked the minor victim about the location where the sexual abuse occurred, the description of the condoms the defendant used, the whereabouts of her family during the encounters, and whether the defendant took pictures of her body.

[14] The defendant argues, alternatively, that this court should overrule *State* v. *Griswold*, supra, 160 Conn. App. 528, as well as its progeny, and impose a rule requiring that, to be admissible, medical treatment must be the "primary purpose" of the diagnostic interview. It is axiomatic that we cannot overrule the decision made by another panel of this court absent en banc consideration. *In re Zoey H.*, 183 Conn. App. 327, 340 n.5, 192 A.3d 522, cert. denied, 330 Conn. 906, 192 A.3d 425 (2018). Although the defendant filed a motion for en banc consideration of this appeal, it was denied on May 23, 2018. Therefore, assuming, without deciding, that this claim was preserved or is reviewable under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), we decline the defendant's invitation to revisit our precedent.

[15] The defendant also argues that the interview should not have been admitted because the underlying premise of the hearsay exception—that the declarant will tell the truth when seeking a medical diagnosis or treatment—was undermined by the victim's failure to be completely honest and candid during the interview. We are not persuaded. This argument was raised for the first time on appeal, so it was not properly preserved. See *Eubanks* v. *Commissioner of Correction*, 329 Conn. 584, 597–98, 188 A.3d 702 (2018). In addition, whether the information provided by the declarant

ultimately is determined to be true, false, or inconsistent has never been the test to determine whether the statement should be admitted in the first place. Again, the test focuses on the declarant's understanding of the purpose for the interview, not the adverse party's attacks on the veracity of the statements made during the interview.

---